UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS G. DESPART,

                    Plaintiff,

vs.                                     Case No.  2:02-cv-4-FtM-29DNF


KATHLEEN KEARNEY, GREGORY VENZ, MS.
MILLER a/k/a CINDY MILLER, DR.
BRIODY, DR. MACHATO a/k/a DR.
MACHADO, DR. M. LIPSCOMB, DR.
ATKERMAN, MICHAEL MOORE, MR. CLEMONS
a/k/a WES CLEMONS, MS. ALLEN a/k/a
MICHELLE ALLEN, MR. HERBERT T.
CASKEY, JOHN OR JANE DOE and KAREN
PARKER,

                    Defendants.
_____


## OPINION AND ORDER

This matter comes before the Court on the following dispositive motions: (1) Defendant Allen's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #77); (2) Defendants Michael Moore, Kathleen Kearney, Gregory Venz and Karen Parker's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #92); (3) Defendant Machado's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #98); (4) Defendant Caskey's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #102); (5) Defendant Miller's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #103); (6) Defendant Wes Clemon's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #116); (7) Defendant

Lipscomb's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the alternative Motion for Summary Judgment (Doc. #117); and Defendant Briody's Motion for Summary Judgment (Doc. #123). Plaintiff, after being granted several extensions of time, filed an Omnibus Response to Defendants' Motions to Dismiss and/or Motions for Summary Judgment ("Plaintiff's Response" Doc. #138).

## I.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is warranted however if, assuming the truth of the factual allegations

of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint.  Marsh, 268 F.3d at 1036 n.16.  While the federal pleading burden is not great, it nonetheless requires fair notice of the claim and the grounds upon which the claim rests.  Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005).  The Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity.  Swann v. Southern Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)).  The heightened pleading standard is not otherwise applicable.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine

issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion.  Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.  Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

In 1986 the State of Florida enacted the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act (hereinafter the "Jimmy Ryce Act"), FLA. STAT. §§ 394.910-.913. Under the Jimmy Ryce Act a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." FLA. STAT. § 394.917(2).  The Jimmy

-4-

Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002). In its statement of "findings and intent," the Florida legislature stated that the Jimmy Ryce Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)" FLA. STAT. § 94.910 (2000). Based upon the "high" "likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence," the legislature's purpose was "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Id.

The agency having custody of such a person must provide certain information to a multi-disciplinary team and the state attorney in the circuit where the person was last convicted of the sexually violent offense prior to the persons release from confinement. FLA. STAT. § 394.913(1)(a). "A written assessment of whether the person meets the definition of a sexually violent predator" is made by the multi-disciplinary team and provided to the state attorney. FLA. STAT. § 394.913(3)(e). After review, the state attorney "may file a petition with the circuit court alleging that the person is a sexually violent predator and stating the facts sufficient to support such allegation." FLA. STAT. § 394.914.

The circuit shall "determine whether probable cause exists to believe that the person . . . is a sexually violent predator." FLA. STAT. § 394.915(1).  If the court finds that probable cause exists, then the person is placed into the custody of the Department of Children and Families ("DCF") and held "in a secure facility without opportunity for pretrial release or release during the trial proceedings," even though the person has already completed his criminal sentence for the underlying sexual offense. FLA. STAT. § 394.915(5).  The person is entitled to a trial within thirty (30) days of the probable cause determination, Fla. Stat. § 394.916(1), and is entitled to the assistance of counsel, and the appointment of counsel if indigent.  FLA. STAT. § 394.916(3).  The trial is civil in nature, and requires the State to prove by clear and convincing evidence that the person qualifies as a sexually violent predator.  FLA. STAT. § 394.917(1).

DCF entered into a contract with Liberty Behavioral Healthcare, Inc. ("Liberty"), a private for profit corporation, to provide the clinical, administrative and internal security staff and services at the FCCC pursuant to the Act.

### III.

At all relevant times, plaintiff Thomas Despart (plaintiff or Despart) was being held at the FCCC pursuant to FLA. STAT. § 394.915(1) as a "probable cause" sexually violent predator, not yet having had his Jimmy Ryce trial.  Plaintiff had finished serving his sentence in the underlying criminal case.  After plaintiff

-6-

filed a Complaint (Doc. #1), an Amended Complaint (Doc. #11), and various amendments and supplements (Docs. #12, 14, 15), the Court appointed counsel (Doc. #17) who, at the Court's direction, filed a Second Amended Complaint (SAC) (Doc. #21) setting forth all of plaintiff's claims.  The SAC consists of 63 pages with almost 300 numbered averments, four composite exhibits, and the incorporation of all previous attachments.  (Doc. #21, n.1.)  The SAC identifies 24 separate defendants, all of whom are sued in their "individual capacities" only.  SAC, p. 2.  After an Introduction, the SAC sets forth 20 separate counts (labeled "A" through "T") purporting to allege violations of 42 U.S.C. §§ 1983 and 1985; the American with Disabilities Act; the First, Fourth, Fifth, Eighth, Fourteenth and Eighteenth Amendments to the United States Constitution; and various state and federal statues and administrative regulations. Multiple claims are included within each lettered count, resulting in a classic "shotgun" pleading.  As relief, Plaintiff asks this Court to declare FLA. STAT. § 394.910 et. seq., unconstitutional as applied to Plaintiff "due to the punitive nature of Plaintiff's confinement;" intervene in Plaintiff's ongoing underlying civil commitment case pending in the Seventh Judicial Circuit; close the FCCC; and award Plaintiff compensatory and punitive damages.  SAC, pp. 2, 57.

**IV.**

**A.  Prior Dismissals:**

Various defendants have previously been dismissed. On March 10, 2005, the Court entered an Order (Doc. #57) granting Plaintiff's motion to voluntarily dismiss with prejudice defendants Charles Crist and Robert Butterworth from the Second Amended Complaint. Judgment (Doc. #59) was entered on March 11, 2005 dismissing defendants Crist and Butterworth.

On June 30, 2005, the Court entered an Order (Doc. #107) granting Plaintiff's motion to voluntarily dismiss with prejudice defendants Sprint Telephone Company and Ms. Jane Doe or John Doe, Owner, President or CEO of Trinity Services Group from the Second Amended Complaint. Judgment (Doc. #108) was entered on July 1, 2005, dismissing defendants Sprint Telephone Company and Ms. Jane Doe or John Doe, Owner, President or CEO of Trinity Services Group.

On November 8, 2005, the Court entered an Order (Doc. #125) dismissing without prejudice defendants Lisa Conway, Dr. Ackerman [sic], Mr. Yeoman, Dr. Baling and Mrs. Brunson for failure to execute service of process on these defendants. Judgment (Doc. #126) was filed on November 9, 2005, dismissing these defendants from the Second Amended Complaint.

On February 22, 2006, the Court entered an Order (Doc. #141) granting Plaintiff's motion to voluntarily dismiss with prejudice defendant Benjamin Brooks and without prejudice defendants Livingston and Gordon. Judgment (Doc. #142) was entered on February 23, 2006, dismissing these defendants from the Second Amended Complaint.

-8-

## B.  Americans With Disabilities Act:

The "Introduction" portion of the SAC states that it is filed under, *inter alia*, the Americans with Disabilities Act (ADA). (Doc. #21, p. 2.)  Under the "Statement of Second Amended Claim" portion of the SAC, plaintiff states: "Given that the [state] Court has determined that the Plaintiff has a mental disorder that requires long term control and treatment, he clearly meets the requirements of a mentally disabled person under The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, and 2, et. seq." (Doc. #21, p. 7.)  None of the twenty lettered counts otherwise purport to state a claim under the ADA.

The Court finds no allegations in the SAC sufficient to invoke the American with Disabilities Act, 42 U.S.C. § 12101, <u>et. seq.</u> The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual . . . ."  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, plaintiff must allege and ultimately show that he: (1) has a disability within the meaning of the ADA, (2) was a qualified individual at the relevant time, and (3) was subjected to unlawful discrimination because of his disability. <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1255 (11th Cir. 2001); <u>Cash v. Smith</u>, 231 F.3d 1301, 1305 (11th Cir. 2000).  Plaintiff has failed to state a claim under the ADA because he has failed to allege that he has any qualifying disability.  The fact that the

-9-

state court judge found probable cause that Plaintiff met the
statutory definition of a sexually violent predator is insufficient
to allege a disability under the ADA.  <u>See</u> 28 C.F.R. § 35.104(5)
(disability as defined in the Act does not include "sexual behavior
disorders").  Thus, to the extent that Plaintiff predicates any
claims upon the application of the ADA, those claims are dismissed
with prejudice.

## C.  Section 1983 Claims:

Plaintiff also states that his claims are brought pursuant to
42 U.S. C. § 1983.  (Doc. #21, p. 2.)  Title 42 U.S.C. § 1983
imposes liability on anyone who, under color of state law, deprives
a person "of any rights, privileges, or immunities secured by the
Constitution and laws."  To state a claim under 42 U.S.C. § 1983,
plaintiff must allege that (1) defendants deprived him of a right
secured under the Constitution or federal law, and (2) such
deprivation occurred under color of state law.  <u>Arrington v. Cobb
County</u>, 139 F.3d 865, 872 (11th Cir. 1998).  In addition, plaintiff
must allege and ultimately establish an affirmative causal
connection between the defendant's conduct and the constitutional
deprivation.  <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1059
(11th Cir. 2001)(<i>en banc</i>).

In his "Statement of Second Amended Claim," plaintiff states
that "<u>[n]one of the defendants was (and is) acting under of color
of law</u>, nor in good faith."  (Doc. #21, p. 7 (emphasis added)).

-10-

Since an element of a § 1983 claim is that a defendant was acting under color of state law, all of plaintiff's § 1983 claims fail to state a cause of action and must be dismissed.

However, contrary to plaintiff's allegation, it is clear from the SAC that all the defendants were acting pursuant to their employment with the State of Florida, and therefore were at least arguably acting under color of law.  E.g., Hillon v. McHugh, 178 Fed. Appx. 866, 870 (11th Cir. 2006)(working for the state satisfied the under color of state law requirement).  The Court will therefore alternatively consider the § 1983 claims as if this element had been sufficiently plead.

As to the federal right requirement, "§ 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002).  Any argument that a mere violation of state law gives plaintiff a viable substantive due process claim has been foreclosed.  Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir. 1995)(citing Collins v. City of Harker Heights, Tex., 503 U.S. 115 (1992)); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(en banc)(substantive rights created only by state law are not subject to substantive due process protection because substantive due process rights are created only by the United States Constitution).  Therefore, no § 1983 claim is stated simply by virtue of alleged violations of the

Jimmy Ryce Act and its various regulations and policies.  To the extent plaintiff asserts otherwise, he is incorrect.

**D.  Unnamed Defendants:**

The SAC states that "all named defendants in the claim are being sued in their individual capacities."  (Doc. #21, p. 2.)  Thus, the SAC is not an institutional level challenge to the procedures at the facility, such as in <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991).  To allege individual liability, the SAC must contain at least some level of facts about the individual's conduct or omissions.  Throughout the lettered counts, however, the SAC refers to conduct without identifying the defendant who committed the act or omission.  This violates Fed. R. Civ. P. 8, and fails to state a claim upon which relief may be granted.  Such allegations fail to provide the defendants with proper notice of a claim.  All such claims which do not identify which defendant is alleged to have committed the acts or omissions are dismissed.  In Count A, claims based upon the allegations in ¶¶ 1-3, 4, 5-7, 9-14, 16-20, 21-26, 29-32 are dismissed.  In Count B, claims based upon the allegations in ¶¶ 58-60, 61, 83-87, 90-91 are dismissed.  In Count C, claims based upon the allegations in ¶¶ 111-12, 114-115, 117, 120, 124-125, 126, 149-151, 162, 174 are dismissed.  In Count E, the claims based on allegations in ¶ 204 are dismissed.  In Count K, the claims based on allegations in ¶¶ 235-236 are dismissed.  In Count M, the claims based on the

allegations in ¶¶ 242-244 are dismissed.  In Count N, the claims based on allegations in ¶¶ 245-246, 248-250 are dismissed.  In Count P, the claims based on the allegations in ¶¶ 253-254 are dismissed.  In Count T, the claims based on the allegations in ¶ 293-295 are dismissed.

**E.   Jimmy Ryce Act as Punitive Measure:**

The SAC generically alleges that plaintiff is subjected to a punitive form of detention under an unconstitutional civil commitment law.  (Doc. #21, pp. 2, 7.)  The Court rejects Plaintiffs' claims the Jimmy Ryce Act is unconstitutional because it is a punitive form of detention.  The Florida Supreme Court has noted that "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects." Westerheide, 831 So. 2d at 99, n.6.  In Kansas v. Hendricks, 521 U.S. 346 (1997) the United States Supreme Court held that involuntary confinement pursuant to the Kansas Sexually Violent Predator Act was not punitive because it did not establish criminal proceedings.  Similarly, the Court finds that the Jimmy Ryce Act is not punitive because it does not establish criminal proceedings.  Thus, the claim that the Jimmy Ryce Act is unconstitutional because it constitutes punishment is dismissed with prejudice as to all defendants.

**V.**

The Court will now address the specifically lettered counts in the SAC.  For the sake of continuity, the Court will also identify those counts which have previously been dismissed.

**A.   Count A: Cruel and Unusual Punishment, Improper Medical Care:**

Count "A" of the SAC, entitled "Cruel and Unusual Punishment Due to Improper Medical Care at the Florida Civil Commitment Center," SAC, pages 8-11, alleges a variety of perceived medical deficiencies in the treatment plaintiff received at the FCCC.  More specifically, plaintiff complains about the time it took (5 months) for him to receive proper fitting shoes, the time it took for him to see a dermatologist (6 months), the manner and frequency in which he received insulin shots for his diabetes, the neglectful ways in which the nursing staff performed its duties, two specific "medical emergencies" he experienced, the failure of John or Jane Doe to provide a balanced calorie restricted diabetic diet, and the length of time he had to wait to see an eye doctor for his vision problems, and the expectation that it will take another six months to receive proper fitting glasses.  (Doc. #21, ¶¶ 1-33.)

The Court assumes that as a person "totally confined," FLA. STAT. § 394.912(11), Plaintiff has the same constitutional rights as a pretrial detainee or prisoner.  E.g. <u>Sandin</u>, 115 S. Ct. 2293 (1995); <u>Youngberg v. Romero</u>, 457 U.S. 307 (1982); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) (citation omitted); <u>Pullen v.

-14-

State, 802 So. 2d 1113, 1119 (Fla. 2001).  As a detainee, plaintiff's rights arise from the Fourteenth Amendment, although the case law developed with regard to the Eighth Amendment prohibition against cruel and unusual punishment is applicable. Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). See also Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985)("In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.").

In order to state a claim for a violation of the Eighth or Fourteenth Amendments, plaintiff must show that the defendant acted with deliberate indifference to plaintiff's serious medical needs. Estelle V. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).  Thus, a plaintiff must show first that he had an "objectively serious medical need" Id. (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001)); and, second that the defendant acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need.  Farrow, at 1235(quoting Farmer v. Brennan, 511 U.S. 825 (1994)). Deliberate indifference is a state of mind more egregious and culpable than mere negligence.  Estelle, 429 U.S. at 104-106.  In fact, even gross negligence does not satisfy the requisite state of mind.  Farmer, 511 U.S. at 835, n.4.

Conduct which results from accidental inadequacy, or which arises from negligence in diagnosis or treatment, or even which is considered medical malpractice under state law, does not constitute deliberate indifference. Taylor, 221 F.3d at 1258. Rather, medical treatment violates the Eighth or Fourteenth Amendment only when it is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Faison v. Rosado, 129 Fed. Appx. 490, 491 (11th Cir. 2005)(quoting Harris v. Thigpen, 941 F.2d 1495, 1501 (11th Cir. 1991)).

The course of treatment chosen by a medical official is "a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Thus, no constitutional violation exists where a plaintiff and a medical official merely disagree as to the proper course of medical treatment. Id. at 106. A plaintiff who complains that delay in medical treatment rises to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay. Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176 (11th Cir. 1994). Further, the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Id.; Harris v. Coweta County, 21 F. 3d 388, 393-94 (11th Cir. 1994).

The only specifically named defendants in Count A are Lisa Conway (¶6 n.3), Dr. Machado (¶¶ 8-15, 25-26), and John and Jane

Doe (¶28) (identified as the Director of the Florida Department of Law Enforcement (Doc. #21, p. 6, ¶ U)). Defendant Lisa Conway was previously dismissed as a defendant (Doc. #125); therefore, no claims remain as to her. John or Jane Doe has never been properly identified or served with process. Additionally, there are no allegations sufficient to establish an obligation by the Director of the Florida Department of Law Enforcement to provide a balanced calorie restricted diabetic diet to plaintiff. Further, there are insufficient allegations that the failure to do so constitutes a violation of the Eighth or Fourteenth Amendments under the standards summarized above. Therefore, Count A will be dismissed as to John or Jane Doe.

As to Dr. Machato, plaintiff claims that due to communication problems among the nurses, Dr. Machado's has been "prevent[ed]" from "stabilizing Plaintiff's diabetes." Id. at p. 9, ¶15. Plaintiff alleges that on April 15, 2002 he declared a "medical emergency for low blood sugar." Id. at p. 10, ¶21. Plaintiff states he was "immediately escorted to the clinic" but that he "had to wait 6-10 minutes for the nurse assigned to A-Dorm to return to the clinic before he would be evaluated and treated." Id. at ¶22. Plaintiff alleges that when he asked Dr. Machado "why he had to wait so long to be treated for his medical emergency," Dr. Machado replied "You did not die!" Id. at ¶26.

Assuming Plaintiff's diabetic condition on April 15, 2002, and in general constituted a "serious medical condition," the Court

finds that the SAC fails to sufficiently allege facts showing that defendant Machado was "deliberately indifferent" to Plaintiff.  In fact, by Plaintiff's own admission Dr. Machado "was working with Plaintiff" on his diabetic condition.  There is no allegation that Dr. Machado refused to treat Plaintiff or ordered any of the nurses not to treat Plaintiff.  In fact, Plaintiff admits he was "immediately" escorted to the clinic, and seen by the nurse as soon as she arrived, which was a mere 6-10 minutes after Plaintiff arrived.

Plaintiff's allegation that defendant Machado remarked that Plaintiff "did not die" in response to Plaintiff's complaint that he had to wait 6-10 minutes to be seen by a nurse does not give rise to a constitutional violation.  Irrespective of whether such conduct is "unprofessional," the law is well settled that verbal harassment and abuse, or threatening language and gestures, do not amount to a constitutional violation.  McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)[1]; see also Munera v. Metro West Detention Ctr., 351 F. Supp. 2d 1353, 1362 (S.D. Fla. 2004).  Here, the Court finds the allegations woefully short of articulating a claim for deliberate indifference against defendant Machado, and will grant Defendant Machado's Motion to Dismiss (Doc. #98).

**B.   Count B: Inhospitable and Overcrowded Conditions:**

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Count B is entitled "Cruel and Unusual Punishment Due to Inhospitable and Overcrowding Living Conditions at the FCCC." SAC, pages 12-18. The only remaining named defendants are Kathleen Kearney, Dr. Briody, and Michael Moore. Kearney is the Director of The Department of Children and Family Services; Briody is the Director of Liberty Behavioral Health Corporation, and Moore is the former Secretary of the Florida Department of Corrections. (Doc. #21, pp. 4-5.)

The conditions of confinement to which pretrial detainees are subjected are impermissible if they constitute punishment as determined by the due process standards of the Fifth and Fourteenth Amendments. Bell v. Wolfish, 441 U.S. 530 (1979); Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985). Not every disability imposed during a pretrial detention, however, amounts to "punishment" in a constitutional sense. Where a restriction or condition of detention is reasonably related to a legitimate governmental objective, it does not, without more, constitute "punishment." Bell, 441 U.S. at 538. Obviously, the State has legitimate interests that arise from its need to manage any detention facility, and the courts should generally defer to the officials who are "'actually charged with and trained in the running' of such facilities." Block v. Rutherford, 468 U.S. 576, 588 (1984)(quoting Bell v. Wolfish, 441 U.S. 562). The Court employs a "totality of conditions" test to determine if the conditions of confinement amount to a constitutional deficiency.

-19-

Wilson v. Blankenship, 163 F.3d 1284 (11th Cir. 1998); Hamm v. DeKalb County, 774 F.2d at 1576.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Supervisory liability under § 1983 arises only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id.

**(1) Excessive Security:**

Plaintiff compares the FCCC to the "political prisoners concentration camps" used in World War II. SAC, p. 11, ¶38. He complains that "razor wire-tipped fences" around the perimeter of the facility and his movements are monitored by "at least 7 security cameras." Id. at ¶¶ 35-41. Plaintiff essentially complains that the manner in which officials ensure security at the FCCC is excessive. It is not clear on what basis Plaintiff claims these conditions violate Plaintiff's right to the due process of law under federal law. The manner in which officials "ensure the security of the detention facility, its employees and [other residents], does not deprive Plaintiff of any right, privilege or immunity secured by the Constitution or the laws of the United

States."   Henry v. Covington County, 2:05-cv-375TWO, 2005 WL 1268263 (M.D. Ala. May 27, 2005).

**(2)  E. Dorm:**

Plaintiff claims that "E" Dorm is "very old and at one time was condemned," and that somehow defendants Briody and Kearney opened E Dorm even though it was "not acceptable for use by the plaintiff."  SAC, p. 12, ¶43.  Plaintiff claims the windows are old and are either stuck open or broken, subjecting Plaintiff to excessive heat in the summer and cold in the winter and permitting an infestation of mosquitos in the dorm.  Id. at ¶44-45.  The roof leaks, causing the ceiling paint to peel, and improper functioning toilets and sinks cause sewage to back up.  Id. at ¶46.  Plaintiff claims that defendant Briody failed to make any repairs Id. at ¶47, subjecting Plaintiff to an "unhealthy and unsafe" place to live. Id. at ¶48.

Plaintiff also complains that because the FCCC "is located in a rural area" the facility is plagued by mosquitos.  Id. at ¶58.  He acknowledges that officials sprayed for mosquitos but complained that they stopped spraying in October, despite "continuos warm weather."  Id. at ¶59.  Plaintiff claims that the "drainage system is in need of extensive work" and suggests that if it was repaired it may "reduce  the mosquito population."  Id. at ¶60.

Finally, Plaintiff finds that the "sewage smell" that is emitted from the "lift station for the sewer system" is "awful."

Id. at ¶85-86.  He is exposed to this smell if he chooses to "sit out on the small basketball court" or if he "walks past that area." Id. at 86-87.

The living conditions of confinement can under certain circumstances state a claim under the Eighth or Fourteenth Amendment.  Chandler v. Crosby, 379 F.3d 1278, 1294 (11th Cir. 2004).  The SAC, however, does not allege sufficient facts to show that any of the three named supervisors could be liable for the conduct.  Even if the Court concluded that the conditions of Plaintiff's commitment were inhumane and that defendant Briody was responsible for those conditions, summary judgment nonetheless is proper because the undisputed evidence demonstrates that reasonable efforts were taken to correct any allegedly deficient conditions and no reasonable finder of fact could find that any defendant acted with deliberate indifference.  Hale v. Tallapoosa, 50 F.3d 1579, 1583 (11th Cir. 1995).  See also Nichols v. Riley, 141 Fed. Appx. 868 (11th Cir. 2005).  Significantly, no windows in the living area of Dorm E were stuck or broken; rather the broken or stuck windows were located in the shower area only and were repaired or replaced in a timely fashion. Affidavit of Russell Perkins, Physical Plant Manager at the FCCC, attached as Exhibit 1 to Defendant's Briody's Motion (Perkin Aff. Doc. #123-2, ¶3). The roof to Dorm E did leak occasionally; when the winds would blow in a certain direction, rain would get into the roof vents and would leak into the building. Id. at ¶4.  Although Dorm E did experience

plumbing and sewage back up problems, it was "typically" the result of residents intentionally flushing inappropriate items down the toilets, such as: mattress filler, pillow linens, clothing, cellular phones, and plastic bags. Maintenance "consistently" repaired the plumbing problems "when they occurred." Id. at ¶5. E Dorm was closed from April 2004 through February 2005 for repairs. DCF spent approximately $192,000 and Liberty spent $20,000 installing new floors and plumbing and painting E Dorm. Id. at ¶6. Simply put, Plaintiff has failed to offer any evidence that he was deprived of "the minimal civilized measure of life's necessities." Hamm, 774 F.2d at 1575. This component of Count B is dismissed as to the three remaining named defendants; in the alternative, summary judgment is entered in favor of defendant Briody as to this component of Count B.

### (3)  Lack of Privacy:

Plaintiff claims a violation of his right of privacy due to the open bay dormitory living arrangement mandated by defendants Briody and Kearney.  Id. at ¶¶50-54.  The dorms are split into four-man quads Id. at ¶52, and plaintiff asserts that defendants Briody and Youman want the staff, including female staff, to have a clear view of inside plaintiff's cubicle.  Id. at ¶ 54.  No proper privacy curtains are in the showers, and there is little privacy in the shower area.  (¶¶ 77-78.)  Plaintiff used garbage bags as a shower curtain, but the staff took them down (¶¶ 79-80),

leaving his naked body exposed to anyone walking down the hallway (¶ 81).

The Supreme Court has determined that "a right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984). While prisoners "retain a *limited* constitutional right to bodily privacy," this right must be evaluated on a "case-by-case basis." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993); Boxer X v. Harris, 437 F.3d 1107 (11th Cir. 2006). Additionally, this claimed right to privacy must be examined in light of whether the complained of action is "reasonably related to legitimate penological interests." Id.

Plaintiff is being held at the FCCC pursuant to the Jimmy Ryce Act upon a probable cause determination that Plaintiff meets the statutory definition of a sexually violent predator due to his previous state conviction for a sexually violent offense. The Court finds that a "four man quad" housing unit where FCCC staff has a clear view inside Plaintiff's cubicle, as described by plaintiff, does not violate Plaintiff's right to privacy under these standards. Cases where privacy violations have been found are far more extreme than anything plaintiff alleges here. See Boxer X v. Harris, 437 F.3d at 1110-11. The SAC fails to state a claim as to the remaining named defendants.

**(4)   Recreation:**

Plaintiff alleges that when he was housed in Dorm C the "exercise area" outside his dorm was the "size of a dog run." <u>Id.</u> at ¶55.  Due to limited outdoor activities and the small size of the exercise area Plaintiff alleges that he is "unable to get proper exercise." <u>Id.</u> at ¶88.  Plaintiff then admits that he is "allowed approximately three hours a day of recreational activities in the institute's old library that was converted into a gym." SAC, page 17, ¶89.  He complains, however, that "due to the arrival of 140 new residents" the gym "frequently" exceeds the maximum number of people permitted inside the facility at one time. <u>Id.</u> at ¶90.  It is unclear how Plaintiff knows the number is exceeded because he complains that the gym lacks "fire safety equipment" and fails to have posted "the lawful capacity of the building." <u>Id.</u> at ¶91.

Further, Plaintiff alleges that Mrs. Nunn, the FCCC recreational therapist, does not provide sufficient "recreational programs" and cites as examples the fact that the FCCC does not provide any of the following activities or training: chess club, arts and crafts, hobby shop, auto body, auto mechanics, carpentry, horticulture, plumbing, carpentry, computer programming and repair. Plaintiff complains that due to the lack of vocational training he will be unable to obtain a "respectful career" when he is released. <u>Id.</u> at ¶¶92-95.

With respect to Plaintiff's claims concerning his lack of outside recreation, the Court finds Plaintiff has more than adequate access to recreation for constitutional purposes. Wilson v. Blankenship, 163 F.3d 1284, 1291-93 (11th Cir. 1998); see also French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)(even severe restrictions on outdoor recreation do not violate the Due Process Clause if the detainee is allowed some indoor activity); Stewart v. McGinnis, 800 F.2d 604, 614-16 (N.D. Ill. 1992), aff'd 5 F.3d 1031 (7th Cir. 1993)(no constitutional violation where inmates kept inside for 85 days but permitted to go to day room or visit other cells). In light of his undisputed access to recreation, Plaintiff has no constitutional right to an exercise area outside his dorm at all, much less a larger area. No cause of action is stated, and this count is dismissed.

With respect to Plaintiff's allegations concerning the lack of vocational training, the Court notes that Mrs. Nunn is not named as a defendant in this action. Consequently any claims predicated on Mrs. Nunn's failure to provide recreational or vocational activities are dismissed.

**(5)  Exposure to Second Hand Smoke:**

Plaintiff claims that he was "frequently exposed to second-hand smoke" because residents who smoked were required to use the exercise area outside his dorm. Id. at ¶¶56-57. Plaintiff fails to identify any defendant responsible for this conduct. In any event, the SAC fails to state a claim in this regard.

-26-

The Supreme Court recognizes that a prisoner may be able to maintain a claim for exposure to environmental tobacco smoke ("ETS") under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25 (1993).  Plaintiff, however, must do more than simply allege he is exposed to second-hand smoke.  Rather, Plaintiff must allege that officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  Helling, 509 U.S. at 35. See also Kelley v. Hicks, 400 F.3d 1282, 1284-85 (11th Cir. 2005); Rivera v. Marcoantonio, 153 Fed. Appx. 857, 858-59 (3d Cir. 2005).

Plaintiff claims only that when he leaves C-Dorm he must pass by this "small area outside the dorm" where smoking is permitted. Since plaintiff is allowed to exercise elsewhere, the Court finds Plaintiff's claim inadequate to state a constitutional violation.

**(6) Food:**

Plaintiff objects to the fact that when he is placed on secure management confinement his meals are in plastic containers that "do not hold as much food as the open population food trays" and the food is "cold and inedible." SAC, page 14, at ¶61. Additionally, Plaintiff complains that, when John or Jane Doe from Trinity Food Service took over the food contract, the food diminished in quality, quantify and type. Id. at ¶¶62-70.  Plaintiff finds the food "very poor even by prison standards." Id. at ¶66.  Plaintiff states that defendant Brooks "is responsible for the preparation of the food" at the FCCC.   Id.   Plaintiff claims that he should

-27-

received the same type of food that is being provided to "patients at the state mental hospitals." Id. at ¶67.

Plaintiff's claims regarding his meals falls short of the magnitude necessary for articulating a constitutional claim. A deprivation must "result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. 825, 834. There is no constitutional mandate that Plaintiff's meals must be hot. Brown-El v. Delo, 9969 F. 2d 644, 648 (8th Cir. 1992) (no constitutional right violated when plaintiff served cold food). Additionally, Plaintiff voluntarily dismissed defendants John or Jane Doe from Trinity Services Group and defendant Brooks with prejudice from this action. See Order of Court dated June 30, 2005 (Doc. #107) and February 22, 2006 (Doc. #141), respectively.

**(7) Housekeeping Services:**

Plaintiff claims that defendant Briody made "illegal profit" off contracts by pocketing money allocated for housekeeping services. Id. at ¶¶72-76. This results, plaintiff says, in unsanitary showers and living conditions, which are borderline uninhabitable.

Even if this is true, the facts alleged would not rise to the level of cruel and unusual punishment, or any other constitutional violation for which plaintiff would have standing. Defendant Briody attaches a copy of the "contract" at issue, and contrary to Plaintiff's unsubstantiated allegations, there is no provision in the contract directing Liberty to provide housekeeping services.

(Briody's Motion, Exh. 2, Doc. #123-3.)  Thus, the Court finds that the allegations fail to state a claim and that the undisputed evidence refutes any such claim.

**(8)  Shower Safety:**

Plaintiff alleges that defendant Briody failed to install "anti slip strips on the floor coming out of the showers" and that this negligence increases chances Plaintiff "may slip and fall on a wet floor and injure himself."  Doc. #21, at ¶¶82-83.  Plaintiff does not allege that he ever fell in the shower, or even advised Briody of any potentially dangerous condition with the showers.  At most, Plaintiff articulates a potential negligence cause of action, which falls far short of stating a constitutional claim.  <u>Farmer</u>, 511 U.S. 825, 835 (mere negligence or even gross negligence does not state a constitutional violation).  These allegations do not state a cause of action, and the undisputed facts establish no claims.

**(9)  Clothing, Defendant Briody:**

Plaintiff states that defendant Briody only issues him a "thin sweatshirt" that is not "sufficient" during the winter months.  <u>Id.</u> at ¶96. Plaintiff's lone statement is not sufficient to state a constitutional infraction.  <u>See</u> <u>Chandler v. Crosby</u>, 379 F.3d 1278 (11th Cir. 2004)(prisoner's mere discomfort, even if severe, without more is insufficient to establish constitutional claim).  Additionally, defendant Briody explains that the canteen stocks a "variety of thermal clothing" in the event a resident desires

additional clothing.  Briody Motion, page 14.  Thus, the Court finds that the allegations fail to state a claim and that the undisputed evidence refutes any such claim.

**(10) Retaliatory Transfer:**

Finally, Plaintiff claims that because he filed a grievance about the lack of access to a law library, defendant Briody transferred him from Martin Treatment Center located in Indian Town, Florida to Wackenhut Corrections Corporations, Southbay Detainee Unit.  (¶97.)  Because this claim preceded Plaintiff's transfer to the FCCC, Plaintiff should have filed this claim in the United States District Court for the Southern District of Florida, since that is the court with proper venue over Plaintiff's allegations.  Nonetheless, the Court finds that the SAC is completely devoid of any factual allegations to support Plaintiff's claim that he was transferred for retaliatory reasons.  Plaintiff fails to allege any facts that would suggest the required casual connection between his transfer and any retaliatory animus by defendant Briody.  Crawford-El v. Britton, 523 U.S. 574, 600 (1998); Hartman v. Moore, 126 S. Ct. 1695 (2006); Sepulveda v. Burnside, 170 Fed. Appx. 119 (11th Cir. 2006).  Thus, Plaintiff's conclusory claim of retaliation must fail as a matter of law.

**C.  Count C: Patient Bill of Rights Statutes:**

Plaintiff's Complaint at "C" is entitled "Violation of State and Federal Patient Bill of Rights Fla. Statute § 394.945 & 42 U.S.C.A. § 10841".  Plaintiff claims that defendants Lipscomb,

Kearney, Venz, and Briody "do not abide by the Federal or State Bill of Rights." SAC, p. 20, ¶105.  This is followed by a litany of allegations which are said to show violations of these statutes.

The Mental Health Patients Bill of Rights, 42 U.S.C. § 10841, promulgated pursuant to the Mental Health Systems Act, 42 U.S.C. § 9501, et. seq., does not create enforceable federal rights.  42 U.S.C. § 10851(a).  Monahan v. Dorchester Counseling Center, Inc., 961 F.2d 987, 994-95 (1st Cir. 1992); Brooks v. Johnson & Johnson, Inc., 685 F. Supp. 107 (E.D. Pa. 1988).  Furthermore, it neither requires nor prohibits any actions of the part of the state or any other party, but rather offers recommendations to the states for the treatment of mentally ill persons. 42 U.S.C. § 10841 (precatory language of the statute is clear by the use of the word "should").  Accordingly, Plaintiff's claim that defendants Lipscomb, Kearney, Venz and Briody violated the Federal Mental Health Bill of Rights, even if factually sufficient, does not give rise to a statutory claim.

**D.  Count D: Mail Violations:**

Section "D" captioned "Violation of United States Mail Laws" alleges that defendants Livingston, Lipscomb, Venz, Kearney and Briody violated plaintiff's rights with regard to mail.  Plaintiff alleges that unlike when he was in state prison, he did not sign any document which permits the FCCC officials to open or seize any item addressed to Plaintiff that was sent via U.S. mail. Id. at ¶184.  The FCCC, however, opens all incoming mail and requires all

outgoing mail to be stamped to indicate to a potential recipient that it originated from the FCCC.  Id. at ¶184.  Plaintiff attaches a copy of the April 17, 2003 Memorandum by Briody implementing this policy to his Complaint (Doc. #21, p. 65).  Plaintiff also asserts that he was sent a magazine, which was seized and has not been returned after thirty days.

It is well established that Plaintiff retains First Amendment rights while he is confined at the FCCC.  Thornburgh v. Abbot, 490 U.S. 401 (1989).  Nonetheless, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is" inherent in any regulated secure facility.  Id. at 407 (quoting Turner v. Safley, 482 U.S. 78, 85 (1987)).  As a regulated, secure facility it is necessary for FCCC officials to implement regulations regarding the handling of incoming mail to ensure that illegal contraband is not introduced into the facility, and deference should be given to those regulations, even if those regulations involve free speech issues.  Id. at 407 (quoting Turner at 85); Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996).  "There is clearly no per se bar to censorship of incoming . . . mail." Lawson, 85 F.3d at 507 n.7 (citations omitted).  Plaintiff fails to provide any factual support as to how the current regulations violate his First Amendment rights.  Thus, Plaintiff's claims regarding the fact that his incoming mail is subject to review by FCCC officials will be dismissed.

Additionally, it is clear that the regulation of stamping Plaintiff's outgoing mail to designate its origin and the fact that it is uncensored furthers "an important or substantial government interest" and is not unnecessarily broad in scope. <u>Procunier v. Martinez</u>, 416 U.S. 396, 413-414 (1974). Notably, in his April 17, 2003 Memorandum (Doc. #21, p. 65), defendant Briody stated that FCCC officials had been notified that "residents of the FCCC are using the U.S. Postal Service to perpetuate deceptive and/or threatening practices." As examples he cites to incidents in which citizens are receiving uninvited and unwanted letters that are attempting to perpetuate a fraud and where public officials are receiving threatening letters. The stated intent of policy is "to help protect unassuming persons from becoming targets of threats and deceit." <u>Id.</u>  The Court finds that this FCCC regulation passes constitutional muster.

Plaintiff also complains about the fact that his magazine had not been returned to him after a month.  SAC at ¶¶180-181. Plaintiff does not specify the name or the content of the publication at issue.  Plaintiff fails to allege any basis whatsoever as to how any actions taken by defendant Lipscomb amount to a violation of Plaintiff's First Amendment rights.

Other than identifying defendant Miller as "the current mailroom clerk supervisor" at the FCCC (Doc. #21, p.6, ¶ P), defendant Miller's name appears nowhere in the SAC. Plaintiff in his Response states that "Ms. Miller [is] responsible under the

theory of *respondeat superior* for mail censorship," and refers this Court to pages 29-30 of the SAC.  Response, p. 21.  As noted supra, the courts do not recognize § 1983 claims predicated only on supervisory liability alone.  <u>Monell</u>, 436 U.S. at 690-692. Nowhere on the pages referenced by Plaintiff does Ms. Miller's name or any reference to her position as mailroom clerk supervisor appear.  Consequently, the Court will grant defendant Miller's Motion to Dismiss.

**E.  Counts E, F: Failure to Promulgate Rules:**

Count E is captioned "The Failure to Promulgate Administrative Rules Renders the Operation of This Program Void."  Plaintiff asserts that defendant Kearney failed to promulgate administrative rules addressing the care and treatment of a pretrial detainee such as himself, and therefore all the agency decisions are void. Plaintiff also asserts that his evaluation under the Jimmy Ryce statute violates his liberty interests, due process, and equal protection because the disciplinary team had no specific rules to follow to determine if plaintiff met the requirements of the Jimmy Ryce Act.  Count F is captioned "The Lack of Administrative Rules Also Leads to a Violation of Due Process and Equal Protection." Plaintiff asserts that the lack of administrative rules rendered application of the statute arbitrary and capricious as to him.

The Court finds that neither Count E nor Count F states a claim.  The operation of the statute has been summarized in Section II of this Opinion and Order, and plaintiff's status has been

described in Section III.  Even without administrative rules, the statute as applied to plaintiff was constitutional.  It involved a judicial review of administrative decisions, and fully complied with due process and equal protection guarantees.  As in <u>In re Commitment of Rodgers</u>, 875 So. 2d 737, 741 (Fla. 2d DCA 2004), plaintiff has not shown how the lack of administrative rules denied him any constitutional right.

Plaintiff's claim that his current civil detention is illegal because defendant Kearney failed to adopt administrative regulations is also barred by <u>Heck v. Humphrey</u>, 512 U.S. at 486-87 (1994); <u>Huftile v. L.C. Miccio-Fonseca</u>, 410 F.3d 1136 (9th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2325 (2006).

**F. Count G: Gender Discrimination:**

The only defendant in Count G was defendant Butterworth, who was dismissed earlier.  Accordingly, Count G is not longer an issue in this case.

**G.  Count H:  Cruel and Unusual Punishment:**

Count "H" is entitled "Cruel and Unusual Due to Violations of Patients Bill of Health and Failure to Abide by Due Process of Law Standards."  To the extent that the count is predicated on the patient bill of rights, no claim is stated, as discussed above.

The only remaining defendants named in this count are defendant Allen and Caskey.  The count does not alleged that Allen did anything; rather, plaintiff was attempting to speak with Allen

but was prevented by defendant Brunson.   Therefore, no claim is stated as to defendant Allen.

As to Herbert T. Caskey, the count states: "defendant Herbert T. Caskey is negligent in allowing his employees to run a treatment facility like a concentration camp." Doc. #21, SAC, p. 37, ¶229. In a footnote to ¶229, Plaintiff states that "When employees of [sic] corporation act outside course of their employment, they, and corporation may form conspiracy under civil rights statute. (citation to case law omitted). Herbert T. Caskey is the President of Operations for Liberty Behavioral Health Care Systems." SAC, Doc. #21, p. 63, n.35.   Plaintiff identifies defendant Caskey as the President of Operations for Liberty Behavioral Health Care System who works at Liberty's corporate office in Bala Cynold, Pennsylvania. SAC, Doc. #21, p. 6, ¶S.

The SAC is entirely unclear as to what constitutional violations defendant Caskey is alleged to have committed or on what basis Plaintiff attributes liability to defendant Caskey. Plaintiff's comparison of the FCCC to a "concentration camp" is not supported by any factual allegations and is the type of "baseless" and "frivolous" claim that warrants dismissal. Neitzke v. Williams, 490 U.S. 319, 327 (1989); see also Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). Further, as noted above, claims based upon alleged negligence cannot support a § 1983 cause of action.

**H.  Count I: Racial Discrimination:**

The only defendant named in Count I is defendant Brunson. This defendant was previously dismissed, and therefore Count I is no longer at issue.

**I.  Count J:  Wanton Misconduct:**

Count J of the SAC is entitled "Wanton Misconduct" and alleges that on July 3, 2002, Plaintiff was ordered into secure management confinement by defendant Brunson after Plaintiff requested for a second time to speak with defendant Allen.  Doc. #21, SAC, ¶¶220-223.  Plaintiff claims that he was denied due process in connection with his four day confinement because he was denied any hearing regarding the charges made by defendant Brunson.  SAC, ¶225. Additionally, Plaintiff asserts that there were no rules and regulations in place at the FCCC to advise Plaintiff of what conduct was impermissible.

The only allegation in the SAC concerning defendant Allen is the following:

> The Defendant Ms. Allen is guilty of "Wanton Misconduct" for she was called to the dorm to speak with the plaintiff before the plaintiff was locked up.  She never came to see the plaintiff, she also approved of plaintiff's solitary confinement without ever speaking to plaintiff to determine what the problem was.  In addition she never did any form of follow up to determine if the plaintiff was guilty of the charge against him.

SAC, ¶234.  Plaintiff in his Response argues that Ms. Allen "in her capacity as supervisor and safety manager . . . had the responsibility to respond to [Plaintiff] **prior** to his detention and

further that her acquiescence in the actions taken (the solitary confinement) was in violation of [Plaintiff's] ... rights." Response, page 10.   Plaintiff argues that defendant Allen's failure "to attend to the situation *prior to the illegal detention*" constitutes "wanton misconduct." Id. at p. 12 (emphasis in original).

The Court finds that the SAC fails to state a claim against defendant Allen.  Plaintiff only complains that Ms. Allen did not come and talk to Plaintiff before he was placed on secure management.   Plaintiff does not provide any specific factual allegations that Ms. Allen had a duty to review defendant Brunson's decisions, yet alone authority to override them. Attributing liability to Ms. Allen merely on the basis of her position as defendant Brunson's supervisor is insufficient to establish a constitutional claim.  To reach this conclusion based solely on Ms. Allen's supervisory position would impute liability to every individual who occupied a supervisory position above defendant Brunson.  Consequently, the Court finds that Plaintiff has failed to sufficiently plead facts to establish a claim that defendant Allen violated Plaintiff's due process rights and will grant defendant Allen's Motion to Dismiss.

## J.  Count K: Access to Religious Materials and Worship:

Count K of the SAC is entitled "Failure to Allow Access to Religious Materials and Religious Worship" and alleges that while plaintiff was detained and imprisoned for the four days he was not

allowed to have any religious reading material with him and was not allowed to attend any religious services during this four days. (Doc. #21, ¶ 235). This Count does not name anyone as a defendant, and therefore fails to state a claim.

**K.   Count L: Mental and Physical Torture:**

Count L of the SAC is captioned "Mental and Physical Torture," and alleges various acts of misconduct by defendant Youman. Since no other defendant is named in this count, and defendant Youman was previously dismissed, this claim is not longer at issue.

**L.   Count M: Unsanitary Living Conditions:**

Count M is captioned "Unsanitary Living Conditions." Plaintiff complains that the confinement cell in which he was placed was unsanitary, and he was denied cleaning supplies. No particular defendant is named in this count, and therefore it fails to state a claim.

**M.   Count N: Fire Hazards:**

Count N is captioned "Fire Hazards." Plaintiff asserts that the open dorms to which he was assigned are dangerous because they lack proper fire safety systems, have very old wood roofs and wooden partitions defendant Briody installed, and the bedding material is flammable. Plaintiff concedes that the dorms have a fire alarm system with smoke detectors, but alleges that the alarm is not linked to shut off the dorm ventilation systems, which would cause any fire to spread. No sprinkler system is installed, and

the fire alarm systems frequently going off falsely, leading plaintiff and others to develop a cry-wold syndrome.

The Court concludes that Count N fails to state a claim. Viewed in the light most favorable to plaintiff, the SAC at most alleges negligence.

**N.   Count O: Retaliation:**

Count O of the SAC is entitled "Possible Retaliation Against Plaintiff by Family Members of Employees Working at this Facility." (Doc. #21, pp. 41-42). Plaintiff maintains that defendant Briody's hiring practice, which permits members from the same family to be employed at the FCCC, subjects Plaintiff to possible retaliation from a defendant's family member. Id. at ¶251. Plaintiff's claims that such nepotism "may" subject him to "possible retaliation" in violation of Plaintiff's First Amendment rights "if" Plaintiff "takes justifiable legal action against an employee." SAC, p. 41, ¶251. Here, Plaintiff alleges no adverse action of any kind but instead speculates that an adverse action might occur in the future. Plaintiff's claim of "possible retaliation" is wholly without merit or legal foundation and will be dismissed.

**O.   Counts P, Q, R, S: Unlawful Use of NCIC and FCIC Reports:**

Plaintiff claims that defendant Parker provided Plaintiff's multidisciplinary team members with copies of records obtained from the Department of Justice and the Federal Bureau of Investigation. SAC, pages 42-56. Plaintiff claims these records were "illegally" obtained from the National Crime Information Center ("NCIC"). Id.

at ¶253, ¶268.   Further, Plaintiff claims that defendant Parker ordered the members to "destroy [the NCIC] evidence." Id. at ¶264. Plaintiff contends that his Due Process rights were violated because the information obtained from the NCIC records is permitted only for "criminal justice purposes." Id. at ¶286.   Plaintiff argues that the multi disciplinary team "relied heavily upon the plaintiff's prior NCIC listed offenses." Id. at ¶287.

To the extent that Plaintiff claims Due Process violations in connection with his underlying Jimmy Ryce proceeding, such claims are properly brought as a habeas action and are not cognizable as a §1983 claim under Heck v. Humphrey, 512 U.S. at 486-87.   The Court finds Plaintiff's claims otherwise without merit.   Plaintiff can not articulate a violation of a constitutional right in connection with defendant Parker's dissemination of the NCIC information to Plaintiff's multi disciplinary team members.   "There is no right to privacy in one's criminal record." Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996)(citing Whalen v. Roe, 49 U.S. 589 (1977)).   Nor does the federal statute governing the dissemination of criminal information confer upon a citizen a private cause of action.   Cline at 181 (citing 42 U.S.C. § 3791(a)(9)).   Rather, the statute places the onus on the federal agency to ensure compliance in disseminating an individual's criminal record and the whether information contained in the record is inaccurate.   Thus, to the extent that Plaintiff had any action in connection with his NCIC information, such a claim would be limited to the accuracy of his

NCIC information and would be directed against the responsible federal agency.  Id. (citing 42 U.S.C. § 3789g(b)).

**P.   Count T: Violation of Prior Court Order:**

Count T of the SAC is captioned "Defendants's Continue to Act in Disregard of Plaintiffs' Constitutional Rights and Further Fail to Abide by a Prior Judicial Order, Resulting in Continuing Treatment of Plaintiff as if he Were in a Concentration Camp, Rather than a Treatment Center." Plaintiff alleges that unidentified defendants have violated a state judge's writ of habeas corpus, thus resulting in a concentration camp.

This count is frivolous.  Plaintiff does not assert that he was the subject of the prior state court order, or that the judge ordered anything as to him, or that he could not seek relief from the state judge if defendants were violating that order.  No federal claim is stated.

**Q.   Defendant Clemons:**

Other than identifying defendant Clemons as "the present Security Director" for the FCCC, his name or any reference to his position appear nowhere in the SAC.  Plaintiff in his Response states that "in his capacity as security director . . . [Mr. Clemons] was in a position of authority to oversee the actions of the facility employees."  The Plaintiff then directs the Court to the theory of liability advanced against defendant Miller - - the theory of *respondeat superior.*  Response, p. 21.

As noted above, courts do not recognize § 1983 claims predicated solely on supervisory liability alone. <u>Monell</u>, 436 U.S. at 690-692.  Accordingly, Defendant Clemons' Motion to Dismiss will be granted.

**VI.**

To extent that the SAC sets forth any viable pendent state law claims with respect to any of the above-named defendants, the Court will exercise its discretion under 28 U.S.C. § 1367(c)(3) and decline to exercise its supplemental jurisdiction over these state claims.  As the Eleventh Circuit has noted, where all federal claims are dismissed prior to trial, the dismissal of state claims is at least strongly encouraged under <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966).  <u>See</u> <u>Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 (11th Cir.), <u>cert. denied</u>, 528 U.S. 820 (1999); <u>L.A. Draper & Son v. Wheelabrator-Frye, Inc.</u>, 735 F.2d 414, 428 (11th Cir. 1984).

In light of the multiple opportunities to amend the complaint, and the assistance of counsel on the Second Amended Complaint, all dismissals will be with prejudice.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendant Allen's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #77) is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed with prejudice to defendant Allen.

-43-

2.   Defendant Machado's Motion to Dismiss (Doc. #98) is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed with prejudice to defendant Machado.

3.   Defendant Caskey's Motion to Dismiss (Doc. #102) is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed with prejudice to defendant Caskey.

5.   Defendant Miller's Motion to Dismiss (Doc. #103) is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed with prejudice to defendant Miller.

6.   Defendant Wes Clemon's Motion to Dismiss (Doc. #116) is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed with prejudice to defendant Clemon.

7.   Defendant Lipscomb's  Motion for Summary Judgment (Doc. #117) is **GRANTED,** and judgment shall enter in favor of defendant Lipscomb.

8.   Defendants Michael Moore, Kathleen Kearney, Gregory Venz and Karen Parker's Motion to Dismiss (Doc. #92), construed as a Motion for Summary Judgment, is **GRANTED,** and judgment shall enter in favor of defendants Michael Moore, Kathleen Kearney, Gregory Venz and Karen Parker.

9.   Defendant Briody's Motion for Summary Judgment (Doc. #123) is **GRANTED,** and judgment shall enter in favor of defendant Briody.

10.    Defendant John and Jane Doe (Director of the Florida Department of Law Enforcement) are **DISMISSED**  with prejudice for the reasons stated above.

11.  The Clerk of Court shall: (a) enter judgment accordingly; (b) terminate any outstanding motions; and (c) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this   26th   day of September, 2006.


JOHN E. STEELE
United States District Judge



SA:  hmk
Copies: All Parties of Record

-45-